The Supreme Court reversed the decree of the Orphans’ Court on February 29th, 1864, in the following opinion per:
Strong J.
We are of the opinion that the appellant ought have been allowed the credit of $701.84, which he claimed for money lost by the failure of the “Saving Fund of the National Safety Trust Company.” Trustees, to whom is committed the custody of money either for investment or distribution, are undoubtedly to be held to rigid accountability. If their duty be to invest they cannot throw upon the cestuis-que-trust the risk of investments *546 other than such as are pointed out by the Act of Assembly or by the order of Court. If, however, they are trustees for custody or distribution they are allowed a reasonable exercise of sound discretion. They must bring to the discharge of their duties that care and prudence which should characterize the transactions of a man of good business habits and judgment in the conduct of his own affairs ; Swoyer’s Appeal, 5 Pa. 383. To hold them to a higher standard of duty would be disastrous to the interests of the community, for prudent men would decline assuming such trusts, encompassed as they would be by extraordinary dangers.
The appellant in this case was an administrator. He was a trustee for distribution, not for investment. His integrity is not called in question. When the letters of administration were committed to him the deceased testator had on deposit in the Philadelphia Saving Fund Society the sum of $751.02. Notice had been given for its withdrawal according to the rules of the company. Accordingly the money was withdrawn by the appellant and immediately deposited as money belonging to the estate of the decedent in the “Saving Fund of the National Safety Trust Company,” a corporation that had up to 'that timo had been in good repute, receiving deposits averaging fifty thousand dollars per month, having had before its failure more than thirty-eight thousand depositors, and among them a thousand or more depositing in a fiduciary character. The company had passed safely through times of severe pressure. When the deposit was made, it paid depositors on demand, though it had a right to require a two weeks’ notice for withdrawal. It continued to pay large demands upon it until more than four months after this deposit was made, when it made an assignment, became insolvent, and the money was lost.
Was the deposit an imprudent act, below the standard of caution, which men of good business habits ordinarily exercise ? It will not do to saj, that executors and administrators having money in hand awaiting distribution may not deposit it at the hazard of the estate, in those institutions in which business men ordinarily keep their own funds. In a large city, mouey is safer deposited thus, than it is in the private dwelling, and men of the *547 highest prudence act upon this opinion. And if so, an administrator is but acting as prudent men act, is'bestowing ordinary •care upon the trust fund committed to him when he makes such a deposit. Moreover by doing it, he is enabled to keep the fund unmingled with his own property, always his duty. If 'then the appellant made the deposit in an' institution - in which he had sound reason to believe it would 'be safe, he was in the line of his duty. Wo cannot but think that that he did. The Institution had been paying on demand all the deposits made with it for years. It had not availed itself of its rule requiring two weeks’ notice of withdrawal. The number and amount of the deposits made there was very large, and it had given evidence of its ability by coming safely through very troublous times. It is true .a witness testifies that about the beginning of November, forty days before this deposit was made, a run upon the institution had commenced, and that it continued up to the 19th of December, 1860, nine days after-the appellant had left the money there. .But he defined what he meant by a “run,” calling it a continuous drain greatly in excess of the receipts.
The auditor- has made too much of this testimony. It is not stated that there was anything in this drain to give warning of danger to depositors, or anything that indicated more than unusual demand for money in the business of its customers. Probably at that time there was a similar drain upon every monied institution. And if so, had The existence of the drain been known to the appellant, of which there is no evidence, his putting the money there may have been prudent discretion, a cautious choice of danger when danger existed on every side.
The auditor was of opinion that there was carelessness in not drawing out the money before March 19th, 1861, when the Savings Fund made an assignment. Yet it is not shown that the appellant was aware, or could have been aware of any increased danger. The contrary ought, perhaps, be inferred from his confinement in an hospital in consequence of an accident-. This, it is true, will not justify want of caution, bqt when caution is dependent upon knowledge the eireunutance is not to be overlooked.
*548 The only- other reason given by the auditor for holding the appellant liable for the money lost is that he removed it from the Saving Fund where it had been previously deposited. In doing so he but carried out the wish and intention of his testator, who had caused notice of its intended withdrawal to be given before his death. If under such circumstances he had not withdrawn it, and the Philadelphia Saving Fund had failed, it might have been argued that he had not acted prudently with much more force thau it can now.
We do not agree with the appellee’s counsel that the deposit made by the appellant can be regarded as an investment, either-made or intended. Upon the whole, looking upon the circumstances of -this case, we come to the conclusion that the money was lost without any want of proper care on the part of the appellant, and that the loss should not be cast upon him.
The decree of the Orphans’ Court is reversed, and it is ordered that the account of the appellant be re-stated, and that á credit be allowed to him of the sum of $701.84, the sum lost by the-insolvency of the Saving Fund of the National Safety Trust-Company.